UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM FLATAU AS TRUSTEE
OF THE ESTATE OF DR. DENNIS
DOHERTY AND DR. DENNIS
DOHERTY,

               Plaintiffs,

vs.

COLUMBIA CASUALTY COMPANY

               Defendant.

CIVIL ACTION FILE NO:
**1:16-cv-01290-WSD**

---

**PLAINTIFFS WILLIAM FLATAU AS TRUSTEE OF THE ESTATE OF
DR. DENNIS DOHERTY AND DR. DENNIS DOHERTY'S BRIEF IN
OPPOSITION TO DEFENDANT COLUMBIA CASUALTY COMPANY'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………….……………....……...ii

STATEMENT OF THE CASE……………………….………….….………1

STATEMENT OF FACTS……………………………………….………………2

LEGAL ARGUMENT………………………………………………….......8

    A.    STANDARD OF REVIEW………………………….……………..8

    B.    THE APPLICABLE RULES OF CONTRACT
           CONSTRUCTION.............................................................................10

    C.    THE CONTRACT LANGUAGE HERE REQUIRES
           ONLY A JUDGMENT AFTER AN ACTUAL TRIAL......………...14

    D.    PLAINTIFFS HAVE BEEN INJURED BY THE
           PREVENTABLE AND UNWARRANTED EROSION
           OF THE COVERAGE LIMITS WHICH WERE AVAILABLE
           BEFORE COLUMBIA CASUALTY FAILED TO
           SETTLE…………………………………………………......…16

    E.    PLAINTIFF DR. DOHERTY HAS BEEN HARMED IN
           OTHER WAYS BY THE INSURER'S BAD FAITH………….....18

    F.    THE APPEAL INITIATED BY THE INSURER SEEKS
           RELIEF WHICH WILL FURTHER HARM PLAINTIFF
           DR. DOHERTY…………………………………………………..19

    G.    IF THE COURT IS DISINCLINED TO ALLOW THE
           LITIGATION TO PROCEED, IT SHOULD STAY THE ACTION
           RATHER THAN DISMISS IT………………………………....23

CONCLUSION…………………………………………………......25

LR 7.1D CERTIFICATION………………………………………………27

# TABLE OF AUTHORITIES

**CASES**                                                              Page(s)

*Arrow Exterminators, Inc. v. Zurich American Ins. Co.,*
    136 F.Supp.2d 1340 (N.D. Ga. 2001)…………….………….............10, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………….…….……………8, 9

*Bennett v. Conrady,*
    180 Kan. 485, 305 P.2d 823 (1957)………………….………....……….22

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,*
    269 Ga. 326, 498 S.E.2d 492 (1998)……………….………..……………10

*Brown v. Southeastern Pain Specialists, P.C., et al.*,
    Civil Action File No. 10EV010621J (State Ct. Fulton Cty., Ga)…....…passim

*Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp.,*
    561 F.3d 1267 (11th Cir. 2009)……………….……………………..13

*Cincinnati Ins. Co. v. Davis,*
    153 Ga.App. 291 (1980)…………………………..……………………...13

*Conley v. Gibson*,
    355 U.S. 41, 78 S.Ct. 99 (1957)……………………….………………....9

*Connelly v. State Farm Mut. Auto Ins. Co.,*
    No. 426, 2015, 2016, del. LEXIS 126 @ *1-2 (Del. Mar. 4, 2016)………..19

*Cowden v. Aetna Cas. And Sur. Co.,*
    389 Pa. 459, 134 A.2d 223 (1957)………………….…….……...……23

*Dalrymple v. Alabama Farm Bureau Mut. Ins. Co.,*
    267 Ala. 416, 103 So.2d 711 (1958)…………….….…………….....…22

*Harper v. Blockbuster Ent. Corp.*
   139 F.3d 1385 (11th Cir. 1998)……………………………………..…..9

*Hart v. Republic Mut. Ins. Co.,*
   152 Ohio St. 185, 87 N.E.2d 347 (1949)…………………………………..22

*Hazelrigg v. American Fidelity & Casualty Co.,*
   241 F.2d 871 (10th Cir. 1957)……………………………………..………..22

*Hill v. White*,
   321 F.3d 1334 (11th Cir. 2003)……………………………………………....9

*Indus. Chem. & Fiberglass Corp. v. N. River Ins. Co.,*
   908 F.2d 825 (11th Cir. 1990)………………………………………….....16

*Jones v. Highway Ins. Underwriters,*
   Tex.Civ.App., 253 S.W.2d 1018 (1952)……………....……..…………….22

*Knudsen v. Hartford Accident and Indemnity Co.,*
   26 Conn.Sup. 325, 222 A.2d 811 (1966)…………………………….…..22

*Leyva v. Certified Grocers of California, Ltd.,*
   593 F.2d 857 (9th Cir. 1979)………………………………….……………24

*Murach v. Mass. Bonding and Ins. Co.,*
   339 Mass. 184, 158 N.E.2d 338 (1959)…………………....…………..22

*Piedmont Office Realty Trust, Inc. v. XL Specialty Ins. Co.,*
   297 Ga. 38(2015)……………………………………………………...........13

*Richards v. Hanover Ins. Co.,*
   250 Ga. 613(1983)…………………………………………………….…10

*Robinson v. Continental Cas. Co.,*
   185 W.Va. 244 (1991)……………………………………………….....15

*Southern Farm Bureau Cas. Ins. Co. v. Parker,*
   232 Ark. 841, 341 S.W.2d 36(1961)…………………………………..22

*State Farm Fire & Cas. Co. v. Madden,*
    192 W.Va. 155 (1994)……………………………………..…………..……..15

*Travelers Indem. Co. v. Whalley Constr. Co.,*
    160 Ga. App. 438 (1981)……………………………………..……..……………13


*Trinity Outdoor, LLC v. Central Mut. Ins. Co.,*
    285 Ga. 583 (2009)……………………………………..………………11, 12

*Tyger River Pine Co. v. Maryland Cas. Co.,*
    170 S.C. 286, 170 S.E. 346 (1933)……………………..……..……………22

*UNR Industries, Inc. v. Continental Casualty Company,*
    942 F.2d 1101 (7th Cir. 1991)…………………………..………...…..……11

*United States Fidelity and Guar. Co. v. Evans,*
    116 Ga.App. 93 (1967), aff'd., 223 Ga. 789 (1967)…………………...…21

*U.S. Fire Ins. Co. v. Mikes,*
    576 F.Supp.2d 1303 (M.D. Fl. 2007)…………………..………………..13, 14

*Waters v. American Cas. Co. of Reading Pa.,*
    261 Ala. 252, 73 So.2d 524 (1953)………………………………...…….…22

*Wilcombe v. TeeVee Toons,*
    555 F.3d 949 (11th Cir. 2009)………………………………………...………9

## STATUTES

O.C.G.A. § 15-2-4……………………………………………………………………..25

O.C.G.A. § 15-3-2…………………………………………………………………..25

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)…………………………………………………...……..8

Plaintiffs, DR. DENNIS DOHERTY ("DR. DOHERTY") and WILLIAM FLATAU AS TRUSTEE OF THE ESTATE OF DR. DENNIS DOHERTY ("FLATAU") submit this Brief in Opposition of Defendant COLUMBIA CASUALTY COMPANY's Motion to Dismiss or, in the Alternative, to Stay.  In response, Plaintiffs show as follows:

## I.   STATEMENT OF THE CASE

Plaintiffs brought this action against Defendant COLUMBIA CASUALTY COMPANY ("COLUMBIA CASUALTY" or "the Insurer"), a medical malpractice insurer, for bad faith refusal and failure of to settle a catastrophic claim against its insureds within policy limits when it had reasonable opportunities to do so.  The Insurer's  actions  resulted in a lawsuit being filed against Plaintiff  DR. DOHERTY and two entities of which he was an owner, styled *Brown v. Doherty et al.,* State Court of Fulton County, Georgia, CAFN:   10EV010621J ("the Underlying Action").  The trial of the Underlying Action resulted in a verdict and judgment against Defendant COLUMBIA CASUALTY's insureds in the amount of $21,981,093.39.  See Complaint, ¶ Introduction.  The judgments damaged both Dr. Doherty and the Bankruptcy Estate.  *Id.,* ¶¶ 31-32

Defendant did not answer, removed the case to Federal Court and moved to dismiss for failure to state a claim, or alternatively, a stay.  Defendant asserts the

1

action is premature, as the Underlying Action is on appeal. The Insurer urges if the judgment is reversed, there will be no bad faith claim to pursue or if affirmed, further appeals may be taken. Essentially, the Insurer asserts Plaintiffs have not been harmed. Plaintiffs show they have already been harmed and the case should proceed, at a minimum, on the issue of liability. Further, the appeal inspired by the Insurer has the potential to cause additional harm.

## II.   STATEMENT OF FACTS

At the time of the events giving rise to the Underlying Action, Plaintiff DR. DOHERTY was a named insured under Defendant's Policy No. NSD 2095840760, with limits of $1,000,000.00 for each claim asserted against him.  Complaint ¶ 131. His practice, Southeastern Pain Specialists, P.C. ("the Practice") was insured under the same policy.  *Id*., ¶ 132.  Southeastern Ambulatory Surgery Center, LLC ("the Surgery Center"), which operated the facility where DR. DOHERTY performed outpatient procedures was also insured by Defendant, but under a separate $1,000,000.00 policy, Policy No. HMA 2066252693-2.  *Id*., ¶¶ 133-34.

Defendant COLUMBIA CASUALTY knew about the additional policy and $1,000,000.000 in coverage.  *Id*., ¶ 135. It failed to disclose these facts. Instead, it transmitted the Declarations Page and policy covering only the Practice to the attorney for the Browns, plaintiffs in the Underlying Action. *Id*., ¶ 137 and Exhibit

2

"D" (response to request for insurance covering the Brown family's losses).

On August 10, 2009, the Brown's attorney provided COLUMBIA CASUALTY an opportunity to settle for $2,000,000.00 and offered to release "Dennis Doherty, D.O., Southeastern Pain Specialists, P.C., and any other firm, person or corporation charged or chargeable with responsibility or liability…." *Id.*, ¶ 138 and Exhibit "E" (August 10, 2009, Demand Letter).

By August 10, 2009, the Insurer had evaluated the Browns' claims at over $2,000,000.00. *Id.*, ¶ 141. Nevertheless, it did not pay $2,000,000.00 in settlement. *Id.*, ¶ 152. Instead, the Insurer wrote the Brown's attorney saying: "It is CNA's[1] position that there is $1,000,000.00 in shared limits for Dr. Doherty and his practice." *Id.*, ¶ 154; *Id.,* Exhibit "F." Instead of settling for $2,000,000.00, the Insurer placed its own interests above those of its insured and did not disclose the additional $1,000,000.00 in coverage. *Id.*, ¶¶ 155-56.

On March 10, 2010, seven months after the initial $2,000,000.00 demand, in reliance on the false representation that there was only $1,000,000.00 covering their losses, the Browns extended a second offer to settle, this time for $1,000,000.00. *Id.,* ¶ 172 and Exhibit "G" (March 10, 2010, Demand Letter). On that date COLUMBIA CASUALTY knew not only that the reasonable settlement

---

[1] Defendant's parent company.

value of the Browns' claims exceeded the $1,000,000.00 demand, but that it exceeded $2,000,000.00.   *Id.*, ¶¶ 159, 161-63.

The March 10, 2010, letter offering to settle against *all* of Defendants' insureds for $1,000,000.00 provided: "This offer will remain open until 5:00 pm on March 19, 2010, **and is otherwise subject to the same terms and conditions identified in our previous August 10, 2009 letter to you**." [Emphasis added.] *Id.,* ¶ 173 and Exhibit "G" (March 10, 2010, Demand Letter). Among the conditions was the requirement that **"The check/draft and an acceptable Release of All Claims releasing them delivered to our office by no later than [the time deadline]** September 15, 2009." [Emphasis added.] *Id.*, ¶¶ 174-75. The August 10, 2009, letter specified that "**The check must be received by a Slappey & Sadd, LLC employee during office hours**." [Emphasis added.] *Id.,* ¶ 176 and Exhibit "G" (March 10, 2010, Demand).  To avoid confusion about the continuing conditions applicable to the $1,000,000.00 demand, the Browns' attorney attached a copy of the August 10, 2009, letter to the March 10, 2010, letter; the fact that it was attached was stated in the March 10, 2010, letter.  *Id.*, ¶ 177.

As a courtesy, the Browns' attorney extended the deadline for the $1,000,000.00 demand until March 31, 2010; all other conditions of settlement remained unchanged.  *Id.,* ¶¶ 186-87 and Exhibit "H" (March 16, 2010, 6:15, p.m.

email granting time extension).  The Insurer received, read and understood the March 10, 2010, demand letter.  *Id.*, ¶¶ 181-84.

Before March 31, 2010, the Insurer never telephoned or emailed the Browns' attorney to object to or to seek clarification of the language in the demand stating "This offer will remain open until 5:00 pm on March 19, 2010, and is otherwise subject to the same terms and conditions identified in our previous August 10, 2009 letter to you."  [Emphasis added.]  *Id.*, ¶¶ 184-85 and Exhibit "G."

No writing to, from or on behalf of the Insurer indicated that the condition of delivering settlement funds by the deadline was changed or that any other term or condition was changed.  *Id.*, ¶¶ 188-89.  All conditions for acceptance of the settlement were known to, in the control of, and capable of being met by the Insurer.  *Id.*, ¶¶ 196-98.  Yet, the Insurer did not satisfy all conditions required in order to accept the offer to settle for $1,000,000.00 by the March 31st deadline. This is so, despite its financial and technological wherewithal to meet the term requiring delivery of $1,000,000.00 during office hours by the March 31st deadline. *Id.*, ¶¶ 199-201.

The Insurer was granted ample time, from August 10, 2009, through March 19, 2010, and extended to March 31, 2010, to consider the claims presented against its insured but failed to meet the demand terms by the deadline.  *Id.*, ¶¶ 203-04.

5

On March 31, 2010, the last possible day to meet the terms of the demand, the Insurer telephoned the Browns' attorney to say that it "accepted" the offer. *Id.,* Exhibit "I," (March 31, 2010, email correspondence discussing telephone call). But the terms of the offer required delivery of funds and an acceptable Release within the deadline as a condition of settlement. *Id.,* ¶ 207. The Insurer delivered no funds towards settlement and no Release by the deadline. *Id.,* ¶ 206 and Exhibit "J" (email from the Browns' attorney stating the terms of the settlement were not met, particularly "**to my knowledge, no check has been delivered to or received by my office.**") [Emphasis added.]

From March 31, 2010, through the entry of the judgments against its insureds, the Insurer never sought to enforce a settlement agreement. To this day, the Insurer has failed to tender any sum of money to the Browns or their attorneys on behalf of Plaintiff DR. DOHERTY, the Practice or the Surgery Center. *Id.* ¶¶ 212-13. As a direct and proximate result of the bad faith of the Insurer Defendant COLUMBIA CASUALTY, the Underlying Action was filed against Plaintiff DR. DOHERTY and the Practice. *Id.,* ¶ 216. When the Browns discovered the Surgery Center's undisclosed $1,000,000.00 policy issued by COLUMBIA CASUALTY, they added the Surgery Center as a defendant. *Id.,* ¶¶217-18.

The Underlying Action was tried to a jury in January 2015 resulting in a

verdict against all defendants totaling $21,981,093.39. Judgment on the verdict was entered May 20, 2015. *Id.,* ¶ 219 and Exhibit "K" (Judgment). Defendant COLUMBIA CASUALTY's bad faith was the direct and proximate cause of judgments being entered against Plaintiff DR. DOHERTY in the amount of $10,990,546.70, the Practice in the amount of $4,396,218.68, and the Surgery Center in the amount of $6,594,328.01. *Id.,* ¶¶ 220-23 and Exhibit "K" (Judgment).

Policy No. NSD 2095840760, covering DR. DOHERTY and the Practice, provides: "[t]he Insured may not bring any legal action against us concerning this policy until: 1. the Insured has fully complied with all the provisions of this policy; and 2. the amount of the Insured's obligation to pay has been decided. **Such amount can be set by judgment against the Insured after actual trial** or by written agreement between the Insured, the claimant and us." [Emphasis added.] *Id.,* ¶ 228 and Exhibit "A" at Section VI (I), (Legal Action Limitation, p. 8 of 10). Plaintiff DR. DOHERTY fully complied with all the provisions of Policy Number HMA 2066252693-2. *Id.,* ¶ 229. The amount of DR. DOHERTY's obligation to pay the Brown's claims has been decided. *Id.,* ¶ 230. It was set by judgment against him, after actual trial. *Id.,* ¶ 231. The Practice has fully complied with all the provisions of Policy No. HMA 2066252693-2. *Id.,* ¶ 232. Likewise, the amount of the Practice's obligation to pay the Browns' has been decided. *Id.,* ¶

7

233. This amount was set by judgment against it, after actual trial. *Id.*, ¶ 234.

The Surgery Center's policy, Policy No. HMA 2066252693-2," provides:

"[n]o Insured may bring any legal action against us concerning this policy until: 1.

the Insured has fully complied with all the provisions of this policy; and 2. the

amount of the Insured's obligation to pay has been decided. **Such amount can be**

**set by judgment against the Insured after actual trial** or by written agreement

between the Insured, the claimant and us." [Emphasis added.] *Id.,* ¶ 235 and

Exhibit "B" at Section XIII (Legal Action Limitation, p. 3 of 6). The Surgery

Center fully complied with all the provisions of its Policy. *Id.*, ¶ 236. The amount

of the Surgery Center's obligation to pay the Browns has been decided. *Id.*, ¶ 237.

This amount was set by judgment, after actual trial. *Id.* ¶ 238. All preconditions

required by Defendant COLUMBIA CASUALTY for suit against it by Plaintiffs

have been met, this action is properly brought at this time. *Id.*, ¶ 239.

### III. LEGAL ARGUMENT AND CITATION OF AUTHORITY

#### A. STANDARD OF REVIEW

FRCP 8(a)(2) requires a pleading contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." To withstand a motion to

dismiss, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim for relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550

U.S. 544, 570 (2007). "A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. In reviewing a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harper v. Blockbuster Ent. Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998), quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957). "A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilcombe v. TeeVee Toons,* 555 F.3d 949, 959 (11th Cir. 2009). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id*.

Here, taking Plaintiffs' factual allegations as true, they have sufficiently plead the elements of a claim for bad faith under Georgia law. Moreover, as shown below, their claims are not premature, but rather ripe, based upon the facts and the express language of Defendant COLUMBIA CASUALTY's own policy.

9

## B. THE APPLICABLE RULES OF CONTRACT CONSTRUCTION

In interpreting contracts under Georgia law, courts are directed to follow certain "well known" maxims. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 269 Ga. 326, 328, 498 S.E.2d 492 (1998) (citing *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 615, 299 S.E.2d 561 (1983)). First, "[w]here the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." *Id.* Second, an insurance provision susceptible to more than one reasonable interpretation is ambiguous, and ambiguities are to be strictly construed against the insurer as drafter of the document and in favor of the insured. *Arrow Exterminators, Inc. v. Zurich American Ins. Co.*, 136 F.Supp.2d 1340 (N.D. Ga. 2001).

In this case, Defendant COLUMBIA CASUALTY had the power of the pen. It chose the terms that make up its policies.[2]  Due to Defendant's intentional selection of terminology, the policy language at issue provides: "[t]he Insured may not bring any legal action against us concerning this policy until: 1. the Insured has fully complied with all the provisions of this policy; and 2. the amount of the Insured's obligation to pay has been decided. **Such amount can be set by**

---

[2] The subject insurance policies, although issued by Columbia Casualty Company, bear the CNA policy logo.  See Exhibit A.  CNA is historically known as Continental Casualty Company and according to the Certificate of Interested Persons filed by Columbia Casualty, CNA is its parent company.

**judgment against the Insured after actual trial"** [emphasis added] or by

written agreement between the Insured, the claimant and us." *Id.,* Exhibit "A" at

Section VI (I), (Legal Action Limitation, p. 8 of 10) and Exhibit "B" at Section

XIII (Legal Action Limitation, p. 3 of 6).

    If COLUMBIA CASUALTY wanted to include the term "final" with regard

to any judgment, it could have done so.  This is apparent from a reading of *UNR*

*Industries, Inc. v. Continental Casualty Company*, 942 F.2d 1101 (7th Cir. 1991).

Notably, in *UNR* a Chapter 11 debtor asbestos manufacturer brought suit to enforce

excess and primary insurers' alleged obligations.   Importantly, the CNA policy in

that case provided that "[n]o action shall lie against [CNA] unless…the amount of

[the insured-UNR's] obligation to pay shall have been ***finally determined*** either by

judgment against [UNR] or by written agreement of [UNR], the claimant, and

[CNA]."  942 F.2d at 1104.  [Emphasis added.]  There, CNA required the action to

be "finally determined" before suit could be brought.

    Here, the policy terms artfully chosen by COLUMBIA CASUALTY

demonstrate a conscious decision to omit language requiring finality of a judgment

as a condition-precedent to bring suit.  The ability to include such language when

finality of a judgment is desired is demonstrated in *Trinity Outdoor, LLC v.*

*Central Mut. Ins. Co.*, 285 Ga. 583 (2009), a case heavily relied upon by

Defendant COLUMBIA CASUALTY. The policy in *Trinity* included explicit language requiring finality of the any judgment as a pre-condition to a lawsuit against the insurer. Specifically, it provided that a "person or organization may sue us to recover on an agreed settlement or on a ***final judgment*** against an insured obtained after an actual trial. 285 Ga. at 585. [Emphasis added.]

In the policies issued here, Defendant COLUMBIA CASUALTY intended to and did omit the requirement that the judgment be final. It would be improper under the rules of construction to insert such language, which is what Defendant COLUMBIA CASUALTY here asks this Court to do.

At best, Defendant's conscious decision to omit words requiring finality of the judgment creates an ambiguity since the words it chose are subject to more than one reasonable interpretation. Defendant's position that the policy requires judgments to be final, despite there being no such words in the policy, would be to Defendant's benefit in this case. However, in a situation where an insured waited more than two years for a case to run its course on appeal, Defendant could argue that since no policy language required finality of judgment, a claimant's rights accrued when judgment was entered; thus the suit should be barred by the statute of limitations. The fact that Defendant's policy could be interpreted in two different ways requires the ambiguity be construed in favor of the Plaintiffs.

12

*Arrow Exterminators, Inc. v. Zurich American Ins. Co.*, 136 F.Supp. 2d 1340, 1348-49 (N.D. Ga. 2001).

The law requires that "[i]n construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. *Arrow Exterminators, Inc.*, 136 F. Supp. 2d 1340, 1348-1349 (N.D. Ga. 2001); *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291, 295, 265 S.E.2d 102 (1980). "The insurer is the master of the writing, and thus it has the duty to use language that is clear and precise." *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438, 440, 287 S.E.2d 226 (1981). Insurers that require finality of a judgment say so in their policies. See *Piedmont Office Realty Trust, Inc. v. XL Specialty Ins. Co.*, 297 Ga. 38, 39 (2015) (umbrella policy unambiguously stated "no action shall be taken against the insurer unless, as a condition precedent thereto, … the amount of the insureds' obligation to pay shall have been **finally** determined either by judgment against the insureds after actual trial, or by written agreement); *see also Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267 (11ᵗʰ Cir. 2009) (policy containing language requiring entry of **final** judgment as a precondition to payment); and *U.S. Fire Ins. Co. v. Mikes*,

576 F. Supp. 2d 1303, 1322 (M.D. Fl. 2007) (policy stating that no action will lie against the insurer unless, as a condition precedent thereto…the insured's obligation to pay had been "**finally determined**" either by judgment or by written agreement).

Defendant COLUMBIA CASUALTY was indisputably the master of the policy at issue. It either chose language precise in that it requires only a judgment and an actual trial (both of which occurred) or it used language unclear as to the *finality* of any judgment being a pre-condition to a lawsuit against it. Defendant should not benefit from any self-created ambiguity. Accordingly, when the ambiguous language is construed in favor of the Plaintiffs, all pre-conditions to filing suit against Defendant COLUMBIA CASUALTY have been satisfied as demonstrated below.

## C. THE CONTRACT LANGUAGE HERE REQUIRES ONLY A JUDGMENT AFTER AN ACTUAL TRIAL.

The Underlying Action was tried to a jury in January 2015 resulting in a verdict totaling $21,981,093.39 and a judgment in that amount being entered on the on May 20, 2015. Complaint, ¶219 and Exhibit "K" (Judgment). Defendant states that for purposes of their motion, the facts of the Complaint are taken as true as required. Plaintiffs cited the prerequisites for bringing this action and asserted that all were satisfied: full compliance with provisions of the policies and judgments

14

against the insureds after actual trial. *Id.* ¶¶ 228-38. Because all preconditions required by Defendant COLUMBIA CASUALTY for suit against it by its insureds have been met, this action is properly brought at this time. *Id.*, ¶ 239.

It is important to note that Defendant COLUMBIA CASUALTY erroneously relies on *Robinson v. Continental Cas. Co.*, 185 W.Va. 244 (1991) for the proposition that an action for bad faith failure to settle is premature when the appellate process has not been completed. See Defendant's Brief, pp. 12-13. The 1991 *Robinson* decision, however, was overruled three years later by *State ex. rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155 (1994). There, an insured, who was injured in a slip and fall accident outside of a restaurant brought a personal injury action against the restaurant and joined his insurer in the action alleging bad faith and unfair insurance practices. The court held that the insurer could be joined as a defendant as long as the claims were bifurcated. Thus, the post-*Robinson* law of West Virginia allows a bad faith action even though the underlying tort action has not been resolved to final judgment. *State ex. rel. State Farm Fire & Cas. Co.*, 192 W.Va. 155, 159-160 (1994). Applying such reasoning in this case mandates the denial of Defendant's Motion to Dismiss because the underlying appeal and this bad faith action are, in effect, bifurcated for all practical purposes.

Based on the facts alleged in the Complaint being taken as true, the requirements of the policies have been satisfied and prerequisites to suit against the insurer have been met:  1. the Insureds have fully complied with all the provisions of the policies; and 2. the amount of the Insureds' obligation to pay have been decided, set by judgment against each of the defendants in the Underlying Action after actual trial.   The Eleventh Circuit has held "[w]e are aware of no authority that holds that an insured must exhaust his appellate remedies (at his own or a third party's expense) before he has a claim against an insurer for failure to settle." *Indus. Chem. & Fiberglass Corp. v. N. River Ins. Co.*, 908 F.2d 825, 832 (11th Cir. 1990).[3]  Thus, the Complaint should not be dismissed for failure to state a claim.

### D. PLAINTIFFS HAVE BEEN INJURED BY THE PREVENTABLE AND UNWARRANTED EROSION OF THE COVERAGE LIMITS WHICH WERE AVAILABLE BEFORE COLUMBIA CASUALTY FAILED TO SETTLE.

A unique provision of the policy has caused Plaintiffs to be damaged by the bad faith failure and refusal of the Insurer to settle, even before all appeals in the Underlying Action are exhausted.  Policy No. NSD 2095840760 (covering Plaintiff

---

[3] Plaintiffs note and recognize that this case is distinguishable because the insurer involved in that case withdrew its defense, but there is the very real threat in this case that Defendant COLUMBIA CASUALTY COMPANY can withdraw their defense once its eroding policy limits are exhausted, i.e. once the entire policy limits have been spent on cost of appealing the Underlying Action.

DR. DOHERTY and his Practice) provides for defense costs within – rather than in addition to – policy limits.  It provides: "**THE LIMITS OF LIABILITY OF THIS POLICY ARE SUBJECT TO REDUCTION, AND MAY BE COMPLETELY EXHAUSTED, BY ANY CLAIM EXPENSES INCURRED IN THE DEFENSE OFANY CLAIM**." [Emphasis added.]  *Id.,* Exhibit "A," at the introductory preface to the section entitled *Limited Professional Liability Policy Physicians/Surgeons* at p. 1 of 10.

Elsewhere the policy provides: "**Claim expenses are within and reduce the Limits of Liability**." [Emphasis added.]  *Id.,* Exhibit "A," in the *Coverage Agreement Sections* I A, *Insuring Agreement.*  It also states "Our payment of the Limit of Liability ends our duty to defend or settle." *Id.,* Exhibit "A," in the *Coverage Agreement Sections* I.B, *Insuring Agreement.*  In Section IV, Definitions, the policy provides: "'Claim Expenses' mean: A. fees charged by an attorney we designate; and B. all other fees, costs and expenses which result from the investigation, adjustment, defense and appeal of a claim." These expenses must be incurred by us or by the Named Insured with our prior written consent." *Id.,* Exhibit "A."

Defendant failed to meet the terms of two (2) separate pre-suit settlement demands offering to release all of its insureds.  It failed to use good faith efforts

17

and that degree of skill necessary to accomplish the settlement.  As a result, a preventable lawsuit was filed against Plaintiff DR. DOHERTY and others.  It has been litigated for over six (6) years culminating in a two (2) week trial and a nearly $22 million dollar judgment.  The limits of coverage, originally available for settlement and payment of judgments, have been unnecessarily dissipated in defending a lawsuit that could have been avoided, if the Insurer had exercised good faith.  Plaintiff DR. DOHERTY and the Practice, in which he has an ownership interest, have been injured.  Even if the present appeal were successful, DR. DOHERTY will be exposed to another trial with diminished coverage limits remaining to defend the litigation or pay any potentially larger judgment which may ensue or left with no defense at all.

### E. PLAINTIFF DR. DOHERTY HAS BEEN HARMED IN OTHER WAYS BY THE INSURER'S BAD FAITH.

Based on allegations in the Complaint regarding damages to Plaintiff DR. DOHERTY, it should not be dismissed for failure to state a claim.  Plaintiffs have asserted that "The breach of the obligations and duties owed by Defendant COLUMBIA CASUALTY to Plaintiff DR. DOHERTY has caused him to be injured and to sustain damages in excess of those damages caused to the Bankruptcy Estate.  *Id.*, ¶ 32. One such injury flowing from the Insurer's breach of its duties and obligations is the stress, mental strain and emotional anguish of

18

enduring more than six (6) years as a defendant in litigation including, ultimately, a lengthy jury trial. *Id.* ¶ 33. If Defendant had used good faith and fair dealing in adjusting and settling the claims against DR. DOHERTY, it could have prevented his suffering the stress, mental anguish and emotional distress of six (6) years as a defendant in the Underlying Action. *Id.* ¶ 34. DR. DOHERTY has incurred medical expenses and wage losses as a result of COLUMBIA CASUALTY's conduct. *Id.*, ¶ 35. He has experienced the loss of patients, potential patients and other business losses associated with the judgment entered against him in the Underlying Action. *Id.*, ¶ 36.

DR. DOHERTY's injuries and resulting damages are ripe for adjudication now because the harms have already occurred. Moreover, these injuries and damages to him, his livelihood and reputation from a $22 million dollar judgment cannot be undone by the underlying appeal, no matter the outcome.

### F. THE APPEAL INITIATED BY THE INSURER SEEKS RELIEF WHICH WILL FURTHER HARM PLAINTIFF DR. DOHERTY.

Ironically, the Insurer has cited a portion of *Connelly v. State Farm Mut. Auto. Ins. Co.*, No. 426, 2015, 2016, del. LEXIS 126 @ *1-2 (Del. Mar. 4, 2016) for the proposition that waiting until final judgment "properly aligns the incentives of the insurer and its insured in the underlying third-party insurance claim…." Here though, Defendant COLUMBIA CASUALTY is advancing appeals by the

19

Practice[4] and the Surgery Center, (companies in which DR. DOHERTY had an ownership interest and which Columbia Casualty insured) which have the potential to adversely affect Plaintiff DR. DOHERTY in a profound way.

A significant portion of the briefs (Exhibits 29 and 30 to Defendants' Motion To Dismiss generally) of the Practice and the Surgery Center, question whether any part of the verdict and judgment should have been apportioned to the companies. (20% was apportioned to the Practice and 30% to the Surgery Center.) If the argument advanced is successful, there is a potential for the *entire* judgment (all $21,981,093.39) to be shifted to DR. DOHERTY alone.  It is difficult to envision how waiting until that result occurs "properly aligns the incentives of the insurer and insured in the underlying third-party insurance claim,"  as Defendant COLUMBIA CASUALTY urges.

Additionally, in the initial trial, DR. DOHERTY's conduct exposed him to a punitive damage phase.  (Exhibit 26 to Defendant's Motion to Dismiss at p. 4.) The jury did not award punitive damages. (Complaint, Exhibit "K") Because Defendant COLLUMBIA CASUALTY has appealed instead of satisfying the judgment, Plaintiff cross-appealed, claiming error at the punitive phases of the

---

[4] It remains unclear who approved the appeal for the Practice and the Surgery Center other than the Insurer as DR. DOHERTY's insurance defense counsel did not know.

trial.  This is significant to DR.  DOHERTY, because his policy does not cover him for punitive damages. His policy with Defendant provides in Section IV, Definitions, "Damages do not include: … C. Punitive, treble or exemplary damages, unless such coverage is required by state law."

Defendant COLUMBIA CASUALTY'S conduct after the Underlying Trial threatens to: further deplete funds previously available for settlement; cause the entire verdict to be shifted to DR. DOHERTY; and expose DR. DOHERTY to punitive damages which were not awarded in the first trial, and are not covered by the policy.  It is difficult to embrace the concept that waiting for the appeals process  "properly aligns the incentives of the insurer and insured in the underlying third-party insurance claim."

In *United States Fidelity and Guar. Co. v. Evans*, 116 Ga. App. 93, 156 S.E.2d 809 (1967), aff'd., 223 Ga. 789 (1967), an excess verdict was rendered against an insured. Despite a post-verdict settlement offer for policy limits, the insurer appealed.  The insurer asserted that as a matter of law it could not be said to have conducted the appeal in bad faith unless the appeal could be characterized as frivolous; the Court disagreed.

"We believe that where the company is the only one that can profit from a successful appeal, which if successful would however subject its insured to the

21

hazards of another trial, the facts for reversal must be very strong. Under such conditions the chances of success must be correspondingly greater than the chances of failure. **Not only must the circumstances be such as to point strongly to a reversal but more important they must be such that there is a great possibility that upon a second trial in any event a judgment will not be returned in excess of the coverage of the policy.**" [Emphasis added.] *Hazelrigg v. American Fidelity & Casualty Co.*, 241 F.2d 871, 873 (10th Cir. 1957); *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 87 N.E.2d 347 (1949).[5]

"We concede there are two extreme views on this question-one is as contended by the insurer that it has an absolute right to appeal with no duty to consider the insured's interest in rejecting a settlement (see cases cited in dissent); the other is that the insurer has an absolute duty to accept any offer to settle for an amount within the policy coverage. While either of these two extreme positions has the advantage of certainty and relative ease of application, we reject them both.

---

[5] Additionally see, *Knudsen v. Hartford Accident and Indemnity Co.*, 26 Conn. Sup. 325, 222 A.2d 811 (1966); *Southern Farm Bureau Cas. Ins. Co. v. Parker*, 232 Ark. 841, 341 S.W.2d 36 (1961); *Bennett v. Conrady*, 180 Kan. 485, 305 P.2d 823 (1957); *Jones v. Highway Ins. Underwriters*, Tex.Civ.App., 253 S.W.2d 1018 (1952); *Accord, Murach v. Mass. Bonding and Ins. Co.*, 339 Mass. 184, 158 N.E.2d 338 (1959); *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346 (1933). It is also the law for our neighbor to the west. *Dalrymple v. Alabama Farm Bureau Mut. Ins. Co.*, 267 Ala. 416, 103 So.2d 711 (1958); *Waters v. American Cas. Co. of Reading Pa.*, 261 Ala. 252, 73 So.2d 524 (1953).

'The predominant majority rule is that the insurer must accord the [116 Ga. App. 97] interest of its insured the same faithful consideration it gives its own interest.' *Cowden v. Aetna Cas. and Sur. Co.*, 389 Pa. 459, 134 A.2d 223 (1957). While this rule will not be as simple to apply in differing circumstances as either of the above absolutes, we think it states the duty owed by any prudent insurer to refrain from taking an unreasonable risk on behalf of its insured...." *Evans, supra,* 156 Ga. App. at 96-97.

Here, the appellate process has the ability to further dissipate the coverage for which DR. DOHERTY paid, shift the entire nearly $22 million dollar verdict to him, expose him to punitive damages (for which he has no coverage) or ultimately, expose him to another verdict in excess of his policy limits. The insurer's appeal cannot be fairly characterized as according the interest of its insured the same faithful consideration it gives its own interest.

### G. IF THE COURT IS DISINCLINED TO ALLOW THIS LITIGATION TO PROCEED, IT SHOULD STAY THE ACTION RATHER THAN DISMISS IT.

Plaintiffs have demonstrated above, why dismissal is unwarranted and improper.  Dismissal presumes that Defendant COLUMBIA CASUALTY will prevail on the underlying appeal – a presumption that cannot be made at this point. Plaintiffs believe a stay is unwarranted because the issues in this case do not mirror

23

those in the underlying appeal.  Plaintiffs, however, recognize the importance of the Court's efficiency.  Therefore, Plaintiffs assert that a stay is more judicious than a dismissal and sends no message with regard to the likelihood of success of the underlying appeals.  A district court can, at its discretion, stay an action pending the conclusion of an alternative proceeding.  See *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-863 (9th Cir. 1979).

Plaintiffs maintain that this Court should deny COLUMBIA CASUALTY's Motion in its entirety, and that a stay is unwarranted.  Plaintiffs have suffered injuries and damages beyond the excess verdict.  Further, the factual allegations of insurer misconduct in this case are separate and distinct from the medical negligence at issue in the underlying appeal.  Notably, a finding that the Insurer acted in bad faith by not settling the Underlying Action, resulting in  DR. DOHERTY  enduring six years of litigation, a trial and damages to him personally, would not conflict with any ruling in the underlying appeal.  Even if the appellate court were to vacate the judgment and remand for re-trial, the injuries caused to Plaintiff DOHERTY cannot be undone by a re-trial of the case.  In fact, since his policy with COLUMBIA CASUALTY is being eroded by the fees and costs associated with the appeal, he may have to face a retrial (if any) without a defense furnished by the Insurer or any coverage to pay any judgment rendered.

The Court of Appeals must rule on the appeal in the Underlying Action by July 16, 2016.[6] The Court should stay the action, if at all, only through July 16, 2016. At that point, this case would be ripe to proceed on all issues. If the Defendant COLUMBIA CASUALTY in fact attempts to appeal further, the Court can reconsider or extend the stay.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs pray and respectfully request that the Defendant's Motion to Dismiss be DENIED.

This 10TH day of May 2016.

FORREST B. JOHNSON &
ASSOCIATES
1745 Martin Luther King Jr. Drive
Atlanta, GA 30314
(404) 758-9111
888-298-0458 facsimile

/s/ STANFORD N. KLINGER, ESQ.
STANFORD N. KLINGER
Georgia Bar No. 425191
FORREST B. JOHNSON
Georgia Bar No. 393480
RENEE Y. TUCKER
Georgia Bar No. 454262
*Counsel for Plaintiffs*

---

[6] O.C.G.A. § 15-2-4 and O.C.G.A. § 15-3-2 provide the Georgia Court of Appeals' January Term begins the first Monday in January and ends April 14th. Oral Argument in the Underlying Action was April 13, 2016. The April Term begins the third Monday in April and ends July 31st. O.C.G.A. 15-2-4(c) provides: "No judgment in a second-term case...shall be rendered during the last 15 days of any term." Fifteen days before the end of the April Term is July 16.

## LR 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing Plaintiffs, DR. DENNIS DOHERTY ("DR. DOHERTY") and WILLIAM FLATAU AS TRUSTEE OF THE ESTATE OF DR. DENNIS DOHERTY ("FLATAU") Brief in Opposition of Defendant COLUMBIA CASUALTY COMPANY's Motion to Dismiss or, in the Alternative, to Stay has been prepared in 14 point Times New Roman font and complies with the margin and type requirements of LR5.1, NDGa.

This 10TH day of May 2016.

/s/ STANFORD N. KLINGER, ESQ.
STANFORD N. KLINGER
Georgia Bar No. 425191
FORREST B. JOHNSON
Georgia Bar No. 393480
RENEE Y. TUCKER
Georgia Bar No. 454262
Counsel for Plaintiffs